UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| LEONARD LEE COLVIN,<br><br>    Plaintiff,<br><br>    v.<br><br>SGT. SANCHEZ, et al.,<br><br>    Defendants. | Case No. 14-cv-05400-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 65 |

## INTRODUCTION

Plaintiff Leonard Colvin, who is a former pretrial detainee at the San Francisco County jail, sued two jail deputies — Victor Sanchez and Scott Neu — based on (1) the defendants' alleged use of excessive force and punishment of him, in violation of the Fourteenth Amendment to the U.S. Constitution, and (2) Lieutenant Sanchez's alleged retaliation against him (after he filed a grievance), in violation of the First Amendment.[1] The defendants moved for partial summary judgment on the following grounds: (1) the Fourteenth Amendment excessive-force claim against Lieutenant Sanchez fails because only Deputy Neu used force, not Lieutenant Sanchez; (2) the

---

[1] Second Amended Complaint ("SAC") – ECF No. 33. At the time, Lieutenant Sanchez was a sergeant but he since has been promoted to lieutenant. Answer – ECF No. 54 at 2 (¶ 4). Deputy Neu "is no longer employed" by the Sheriff. *Id.* (¶ 5); *see* Durkan Decl. – ECF No. 65-7. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 14-cv-05400-LB

First Amendment claim against Lieutenant Sanchez fails because Mr. Colvin did not suffer injury in the form of a chilling of his First Amendment rights; (3) the Prison Litigation Reform Act ("PLRA") bars damages for mental or emotional injury for the claim predicated on force because Mr. Colvin suffered no physical injury; and (4) the claim for injunctive relief is moot because Mr. Colvin is no longer in custody at the San Francisco County jail.[2]

Mr. Colvin concedes summary judgment on the claim for injunctive relief, which is moot.[3] Genuine disputes of material fact preclude summary judgment on the other claims. First, in his first claim, Mr. Colvin does not claim merely excessive force and instead challenges conditions of his confinement — including the defendants' interrogating him naked, handcuffing him and jerking on the cuffs to cause pain, punching him, and threatening him (among other acts) — that amount to punishment. Second, as to the First Amendment claim, this conduct could chill a person of ordinary firmness. Finally, the court will address damages issues through motions in limine (depending on the theory of the case) or jury instructions (depending on the evidence at trial).

**STATEMENT**

**1. The February 21 Incident**

On February 21, 2014, Lieutenant Sanchez and Deputy Neu transported Mr. Colvin, a pre-trial detainee at the San Francisco County Jail, and his cellmate, from County Jail 5 (CJ-5) in San Bruno, California, to County Jail 4 (CJ-4) at the Hall of Justice in San Francisco, California.[4] Mr. Colvin contends that the deputies transported him there to threaten and terrorize him, including by using too-tight handcuffs, strip-searching him to demean him, and punching him.[5] He characterizes it as "Bus Therapy" to interrogate him about his interactions with his former wife,

---

[2] Mot. – ECF No. 65 at 8–11.

[3] Opp'n – ECF No. 69 at 8.

[4] Answer – ECF No. 54 at 2 (¶ 3); Colvin Decl. – ECF No. 69-1 at 2 (¶ 2); Colvin Statement, Ex. D to Hannawalt Decl. – ECF No. 65-5 at 4 (p. 3:1−6).

[5] Colvin Decl. – ECF Non. 69-7 at 2 (¶¶ 2–3).

ORDER – No. 14-cv-05400-LB            2

April Myres, then a deputy at the jail, who testified at Mr. Colvin's criminal trial.[6] The defendants do not dispute that they transported Mr. Colvin to CJ-4 and that Deputy Sanchez spoke with him about harassing Ms. Myres, but they deny any physical contact with him.[7]

In the Second Amended Complaint ("SAC"), which he signed in the form of a declaration under penalty of perjury,[8] Mr. Colvin describes the February 21 encounter as follows. He was transported (with his cellmate) in too-tight handcuffs (after being strip searched) to the holding cell at CJ-4.[9] Then, two unknown deputies handcuffed him and took him to the mattress room/clothing room on the seventh floor, where Lieutenant Sanchez, wearing black leather gloves, was leaning against the counter with a smirk on his face.[10] Deputy Neu ordered Mr. Colvin to get undressed and get on his knees, and asked him, "do you know why you're here?"[11] Mr. Colvin responded that it was because of his wife, Deputy Myres.[12] Lieutenant Sanchez said, "Correct," and told him that (1) Deputy Myres had reported that Mr. Colvin's cell mate was making prank telephone calls to her, (2) as the sergeant on the floor, he had the power to run the floor, and (3) if Mr. Colvin threatened Ms. Myres, the deputies were "going to whoop your ass and fuck you up.!"[13] Lieutenant Sanchez then punched him in the gut twice and ribs once and said, "You see I called you out of CJ #5 (San Bruno) and they brought you two out here, and nobody stopped it. What does that tell you?"[14] Mr. Colvin responded (in pain) that he did not know, and Lieutenant

---

[6] SAC – ECF No. 33 at 2–4 (¶¶ 9–13). Mr. Colvin's complaint is in the form of a declaration and is signed under penalty of perjury. *Id.* at 7. Mr. Colvin represented himself initially, and later, after the previous judge referred him for pro bono counsel, he retained counsel. Order – ECF No. 39; Notice – ECF No. 41.

[7] Mot. – ECF No. 65 at 6; Answer – ECF No. 54 at 2 (¶ 13).

[8] SAC – ECF No. 33 at 7.

[9] *Id.* at 2–3 (¶ 12).

[10] *Id.* at 3 (¶ 13).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

Sanchez told him that "It means they don't give a fuck about what happens to you."[15] When Mr. Colvin tried to explain that Deputy Myres was lying, Deputy Neu punched him in the stomach and told him, "I don't give a fuck about a grievance, I.A. (Internal Affairs) or none of that shit. I hear one more thing about you and Deputy Myres, or anything about a prank call to her, we are going to whoop your ass or kill you and aint nobody gonna do nothing about it. For now we're going to tell the guys (arrestees/inmates) you're a snitch. That snitch jacket should hold you up a [w]hile."[16] The deputies began spitting on him, and Deputy Neu punched him in the stomach twice and the ribs once, causing pain, and Mr. Colvin could not sleep for five nights because of the rib pain.[17] In his statement of legal claims, Mr. Colvin summarizes the encounter as follows:

> 21. Defendant Sgt. Victor Sanchez [and] Deputy Scott Neu . . . stripped Colvin butt-naked, placed him in too-tight cuffs, ordered him to his knees, beat him and spit in his face, [and] dehumanized him for no legal penological interest. . . .
>
> 22. Defendants Sgt. Victor Sanchez [and] Deputy Neu . . . had Colvin "transferred" [from] San Bruno County Jail CJ #4 for no legal justifiable penological interest but to beat, threat[en] and intimidate Colvin. . . .
>
> 23. Defendant Sgt. Victor Sanchez [and] Deputy Neu . . . transferred [Mr. Colvin] from a different facility, took him to an isolated part of CJ # 4 in a laundry/mattress storage room, applied restraint cuffs too tight while butt-naked, threatened, beat and spit in the face of Colvin resulting in injured ribs, humiliation, a snitch jacket put on him resulting in [scars] on his wrist, sleepless and loss of appetite a week. . . .[18]

Mr. Colvin also described the incident in his deposition, a recorded statement, and a written grievance form.[19] He knew Deputy Neu and Lieutenant Sanchez before the February 21 incident.[20] He describes the February 21 encounter with them fairly consistently with his earlier description

---

[15] *Id.*

[16] *Id.* at 3–4 (¶ 13).

[17] *Id.*

[18] *Id.* at 5–6 (¶¶ 21–23).

[19] Colvin Dep., Ex. C to Hannawalt Decl. – ECF No. 65-4; Colvin Grievance Form – ECF No. 65-4 at 35–36; Colvin Statement, Ex. D to Hannawalt Decl. – ECF No. 65-5.

[20] Colvin Dep., Ex. C to Hannawalt Decl. – ECF No. 65-4 at 12 (p. 78:14−19); Colvin Grievance Form – ECF No. 65-4 at 36; Colvin Statement, Ex. D to Hannawalt Decl. – ECF No. 65-5 at 9 (p. 8:13–6:6).

in the SAC.[21] The material differences include the following. Mr. Colvin reported that only Deputy Neu punched him on February 21 and said that Lieutenant Sanchez had no physical contact with him and was at least three or four feet away from him that day.[22] In response to the question about whether the punch hurt, he said, "[n]o, not really," and he did not ask for medical assistance because he did not need it.[23] The punch (which he characterized as a "body check") was not a hard punch (because Deputy Neu did not put his full might into it) and did not leave a mark or a bruise.[24] He felt threatened and scared.[25]

### 2. The March 3 Incident

On March 3, 2014, Mr. Colvin had a medical appointment at San Francisco General Hospital and then was transported to CJ-4 (as an interim stop before his transport back to CJ-5).[26] There, Lieutenant Sanchez confronted him about writing a grievance form about the February 21 incident. Lieutenant Sanchez said that he would fuck Mr. Colvin up for writing the grievance and kill him, he called him a bitch and a snitch, he pushed him toward a table (which Mr. Colvin hit with his waist), he called him a murderer, yelled at the top of his lungs, and tried to provoke Mr. Colvin into punching him, and he spit in Mr. Colvin's face many times ("not . . . as in a loogie . . . but saliva . . . flying out of [his] mouth").[28] As part of this encounter, Lieutenant Sanchez cuffed Mr. Colvin in overly tight cuffs (and pulled up on the chain and twisted it to increase the pain),

---

[21] Colvin Dep., Ex. C to Hannawalt Decl. – ECF No. 65-4 at 13–15 (p. 87:4–89:7); Colvin Grievance Form – ECF No. 65-4 at 35–36; Colvin Statement, Ex. D to Hannawalt Decl. – ECF No. 65-5 at 4–9 (pp. 3:3–8:6).

[22] Colvin Dep., Ex. C to Hannawalt Decl. – ECF No. 65-4 at 13–15 (p. 87:4–89:7), 25 (p. 103:2–25); Colvin Grievance Form – ECF No. 65-4 at 36; Colvin Statement, Ex. D to Hannawalt Decl. – ECF No. 65-5 at 6–7 (p. 5:21–6:14), 17 (p. 16:21–23).

[23] Colvin Dep., Ex. C to Hannawalt Decl. – ECF No. 65-4 at 27 (p. 105:8–24).

[24] *Id.* at 25–27 (pp. 103:2:–105:5).

[25] Colvin Statement, Ex. D to Hannawalt Decl. – ECF No. 65-5 at 8–9 (pp. 7:22–8:2).

[26] SAC – ECF No. 33 at 4 (¶ 15); Colvin Dep., Ex. C to Hannawalt Decl. – ECF No. 65-4 at 28–29 (pp. 118:19–119:4); Colvin Statement, Ex. D to Hannawalt Decl. – ECF No. 65-5 at 20 (p. 19:3).

[28] Colvin Dep., Ex. C to Hannawalt Decl. – ECF No. 65-4 at 20–22 (pp. 19:19–21:25); Colvin Statement, Ex. D to Hannawalt Decl. – ECF No. 65-5 at 30–31 (120:23–121:20).

causing extreme pain and leaving indentations on Mr. Colvin's wrists.[29] Later in the deposition, Mr. Colvin described the encounter as follows:

> Sergeant Sanchez got up in my face. Yeah. Sergeant Sanchez told me to get against the wall, I told him, "I'm just trying to get back to Bruno." Sergeant Sanchez said, "I said get against the fucking wall and put your hands behind your back." I told him I didn't want any problems. He then placed his handcuffs on me and squeezed them super, super right to where it was just like that (indicating). And he grabbed the cuffs, twisted it up and walked me to the mattress room, and that's where he went on his rant, spit in my face not once, not three, not four. He spit in my face about nine times, called me bitches, snitches. He went and got my housing card, came back, called me a murderer. Took the handcuffs off me and wanted me to fight I, tried to provoke me to throw a punch at him. Spit in my face.[30]

Lieutenant Sanchez did not punch Mr. Colvin.[31] Instead, Mr. Colvin said, "[h]e wanted me to punch him or fight him. He was trying to provoke me to get into a fight with him and then took me back in the room, and Sergeant Bliss was in the back and he came, 'Col, what's up, man? What's going on?"[32] Mr. Colvin told Sergeant Bliss what happened.[33] At first Mr. Colvin did not want to go out (presumably from the room), but Sergeant Bliss told him, "[l]ook, man, nothing is going to happen you. We're going to put you on the bus and get you all out of here. He was wrong, ain't nobody falling for that."[34]

Mr. Colvin did not ask for medical attention because the indentations on his wrist from the overly tight cuffs were gone by the time he arrived at CJ-5.[35] Mr. Colvin filed another grievance against Lieutenant Sanchez regarding the March 3 incident, and then he was transferred to a jail in Stanislaus County.[36]

---

[29] Colvin Dep., Ex. C to Hannawalt Decl. – ECF No. 65-4 at 31 (p. 121:17–24); Colvin Statement, Ex. D to Hannawalt Decl. – ECF No. 65-5 at 23–24 (pp. 22:1–23:10).

[30] Colvin Dep., Ex. C to Hannawalt Decl. – ECF No. 65-4 at 30–31 (pp. 120:23–121:13).

[31] *Id.* at 31 (p. 21:15).

[32] *Id.* (p. 21:17–24).

[33] *Id.* at 31–32 (pp. 121:25–122:3).

[34] *Id.* at 32 (p. 122:4−6).

[35] Colvin Statement, Ex. D to Hannawalt Decl. – ECF No. 65-5 23–24 (pp. 22:13–23:6).

[36] *Id.* at 19 (p. 18:1−16); Colvin Dep., Ex. C to Hannawalt Decl. – ECF No. 65-4 at 30 (p. 120:1−11), 32 (p. 122:21−25).

**3. Relevant Procedural History**

Mr. Colvin initially represented himself and ultimately — after the previously assigned judge referred him for the appointment of pro bono counsel — he retained his current counsel.[37] The SAC is the operative complaint, and — following the previously assigned judge's rulings — has the following live claims: "liberally construed, it states cognizable claims for damages under § 1983 for: (1) retaliation for filing a grievance in violation of the First Amendment against Sgt. [now Lieutenant] Sanchez, and (2) use of excessive force and punishment on a pretrial detainee in violation of the Fourteenth Amendment against" Lieutenant Sanchez and Deputy Neu.[38]

Mr. Colvin left pretrial custody at the San Francisco jail when he was sentenced — and then imprisoned — at San Quentin.[39] At the March 5, 2020 summary-judgment hearing, his lawyer confirmed that Mr. Colvin has finished his prison sentence.[40]

# SUMMARY-JUDGMENT STANDARD

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or

---

[37] Order – ECF No. 39; Notice – ECF No. 41.

[38] Orders – ECF No. 32 (finding plausible claims), 35 (summary judgment in favor of April Myres).

[39] *See* Superior Court minutes – ECF No. 65-6 at 2; Cauteruccio Decl. – ECF No. 65-8.

[40] Minute Order – ECF No. 72.

ORDER – No. 14-cv-05400-LB 7

defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

# ANALYSIS

Mr. Colvin alleges a course of conduct amounting to excessive force, punishment, harassment, and retaliation, starting with the February 21, 2014 incident and culminating with Lieutenant Sanchez's alleged actions on March 3, 2014.[41] Lieutenant Sanchez tries to separate the conduct into Fourth Amendment conduct (based on the February 21 incident) and First Amendment conduct (based on the March 3 incident) and then moves to dismiss the "Fourth Amendment" claim against Lieutenant Sanchez on the ground that only Deputy Neu punched Mr. Colvin.[42] The claims cannot be parsed this way. Instead, Mr. Colvin raises (1) a Fourteenth Amendment claim

---

[41] *See* SAC – ECF No. 33; *see also* Colvin Dep., Ex. C to Hannawalt Decl. – ECF No. 65-4 & Colvin Statement, Ex. D to Hannawalt Decl. – ECF No. 65-5.

[42] Mot. – ECF No. 65 at 8–10.

ORDER – No. 14-cv-05400-LB          8

about the conditions of his confinement (against both defendants) that amounted to punishment and (2) a separate First Amendment claim against Lieutenant Sanchez for retaliating against him for filing a grievance form about the February 21 encounter.[43] Material disputes of fact preclude summary judgment on either claim.

In the next sections, the court addresses (1) the conditions-of-confinement claim, (2) the First Amendment claim of retaliation, and (3) damages.

**1. Conditions-of-Confinement Claim**

When a pretrial detainee challenges conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). The state may detain a pretrial detainee "to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment or otherwise violate the Constitution." *Id.* at 536–37. If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective it does not, without more, amount to punishment. *See id.* at 539; *cf. Wagner v. Cnty. of Maricopa*, 706 F.3d 942, 948 (9th Cir. 2013) (remanding to trial court to determine whether the unexplained procedure of "dressing-out" a detainee, known to be in need of psychiatric treatment, from civilian clothes to jail garb, which included wearing pink underwear, was punishment without legal justification when detainee believed he was being raped and humiliated). But if a restriction or condition is not reasonably related to a legitimate goal, i.e., if it is arbitrary or purposeless, a court may infer that the purpose of the governmental action is punishment. *See Bell*, 441 U.S at 561–62.

Here, the evidence that Mr. Colvin advances shows triable issues of material fact that the conditions of his confinement amounted to punishment. This is a Fourteenth Amendment claim, not merely a Fourth Amendment claim. The force is not just the punch, and the claim is not just about the force: it includes (on February 21) the two defendants' ordering Mr. Colvin to strip

---

[43] SAC – ECF No. 33.

naked, handcuffing him, jerking on the handcuffs, punching him, threatening him, and yelling at him, and (on March 3) Lieutenant Sanchez's confronting Mr. Colvin, threatening him, pushing him, handcuffing him and twisting the cuffs deliberately to cause pain, and trying to provoke Mr. Colvin to punch him.[44]

It may be that the Fourth Amendment is implicated. The Due Process Clause of Fourteenth Amendment protects pretrial detainees "from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citing *Graham v. O'Connor*, 490 U.S. 386, 395, n.10 (1989)). "[T]he Fourth Amendment sets the 'applicable constitutional limitations' for considering claims of excessive force during pretrial detention." *Gibson v. Cnty. of Washoe,* 290 F.3d 1175, 1197 (9th Cir. 2002) (internal quotation omitted) (overruled on other grounds by *Castro v. Cnty., of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)).

And parsing out the conduct perhaps shows that the individual acts are not Fourth Amendment violations or do not alone establish a § 1983 violation. Overly tight handcuffs sometimes can establish a Fourth Amendment violation, and sometimes they do not. *See Wall v. Cnty. of Orange*, 364 F.3d 1107, 1109–10, 1112 (9th Cir. 2004); *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 952, 960 (9th Cir. 2000); *Stevenson v. Jones*, 254 F.Supp.3d 1080, 1085, 1091–92 (N.D. Cal. 2017). A shove alone does not establish a § 1983 violation. *Meredith v. State of Ariz.*, 523 F.2d 481, 483 (9th Cir. 1975) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d. Cir. 1973). A one-time incident of spitting generally is not a constitutional violation. *Zavala v. Barnik*, 545 F.Supp.2d 1051, 1059 (C.D. Cal. 2008). Due process generally is not required in connection with transfers between housing units in the same prison. *Mathews v. Fairman*, 779 F.2d 409, 415–16 (7th Cir. 1985). Mere threats fail to state a § 1983 claim. *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987). Allegations of verbal harassment and abuse fail to state a § 1983 claim. *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) (overruled in part on other grounds in *Shakur v. Schriro*, 514 F.3d 878-884–85 (9th Cir. 2008)).

---

[44] *Id.* at 2–5 (¶¶ 9–17).

But the conduct here is not one of these acts. It is all of them. It is more than just a punch or jerking handcuffs: it was conduct to humiliate and threaten Mr. Colvin, to cause him pain, and to punish him. Moreover, even without physical contact, harassment coupled with conduct can amount to punishment that violates the Fourteenth Amendment (for pretrial detainees) and the Eighth Amendment (for prisoners). *Hudson v. Palmer*, 468 U.S. 517, 528–30 (1984) (malicious cell searches and harassment unrelated to prison needs may implicate the Eighth Amendment's protection against cruel and unusual punishment). Also in the Eighth Amendment context, verbal harassment intended to humiliate or endanger an inmate can violate the Constitution. *Valandingham v. Borjorquez,* 866 F.2d 1135, 1139 (9th Cir. 1995) (officers called the plaintiff a "snitch" in front of other inmates).

In sum, the contention about Lieutenant Sanchez is that his conduct was punishment that took place on two days: February 21, 2014 and March 3, 2014. Even if the claim were confined to the February 21 incident, Mr. Colvin contends that conduct was joint (with Deputy Neu), intentional, planned, abusive, and punitive.[45] The court cannot say on this record that Lieutenant Sanchez was not fundamentally involved in the conduct that caused the alleged harm on February 21. *See Blankenhorn v. City of Orange,* 485 F.3d 463, 481 n.12 (9th Cir. 2007) (discussing integral-participant doctrine). Triable issues about material facts preclude summary judgment.

### 2. Retaliation

Mr. Colvin also claims that Lieutenant Sanchez's actions on March 3 establish retaliation for his protected activity in filing a grievance about the February 21 incident. Lieutenant Sanchez moves for summary judgment on the ground that Mr. Colvin pleads no injury, meaning, he did not show that the adverse action "chilled the exercise of Plaintiff's First Amendment Rights."[46] The court denies summary judgment.

---

[45] *See, e.g.*, *id.* at 2–4 (¶¶ 12–13).

[46] Reply – ECF No. 71 at 7–8.

ORDER – No. 14-cv-05400-LB 11

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567−68 (9th Cir. 2005) (footnote omitted).

Prisoners may not be retaliated against for exercising their right of access to the courts. *See Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). The right of access to the courts extends to established prison grievance procedures. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) (overruled on other grounds in *Shaw v. Murphy*m 532 U.S. 223, 230 (9th Cir. 2001)). Thus, a prisoner may not be retaliated against for using such procedures. *Rhodes* 408 F.3d at 567; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003); *see, e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1114–18 (9th Cir. 2012) (cognizable claim under § 1983 where in retaliation for filing grievances, inmate was issued false disciplinary charge by officer, denied parole in part due to false statements made by another officer, threatened to be punched by third officer, and deprived of food by fourth officer).

Lieutenant Sanchez does not challenge prongs one, two, three, or five and instead contends only that prong four — chilling of speech — is not shown by what at most is Lieutenant Sanchez's picking a fight with Mr. Colvin.[47]

As to prong four, Mr. Colvin must at least allege that he suffered harm, because harm that is more than minimal will almost always have a chilling effect. *Rhodes*, 408 F.3d at 567–68 n.11; *see Gomez v. Vernon*, 255 F.3d 1118, 1127–28 (9th Cir. 2001) (prisoner alleged injury by claiming he had to quit his law library job in the face of repeated threats by defendants to transfer him because of his complaints about the administration of the library). He need not demonstrate a total chilling of his First Amendment rights in order to establish a retaliation claim. *See Rhodes*, 408 F.3d at 568–69. That a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough. *Id.* at 569 (destruction of inmate's property and assaults on inmate enough to chill

---

[47] *Id.*; Mot. – ECF No. 65 at 8–9.

inmate's First Amendment rights and to state a retaliation claim, even if inmate filed grievances and a lawsuit). "[A] plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 568–69).

Here, Mr. Colvin has described conduct that involved threats, force, pain, and abuse and so establishes a dispute of material fact that the conduct could chill a person of ordinary firmness. Triable issues about material facts preclude summary judgment.

### 3. Damages

The defendants contend that as to any claim resulting from the force, Mr. Colvin is not entitled to damages because he suffered no physical injury, and the PLRA precludes damages based on mental or emotional distress.[48]

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C 1997e(e).

The qualifying physical injury must be more than de minimis, but it need not be significant. *See Oliver v. Keller*, 289 F.3d 623, 627–29 (9th Cir. 2002) (back and leg pain caused by sitting on the cement floor, undefined injuries from an assault by another prisoner, and a painful canker sore were de minimis); *id.* at 628 (rejecting argument that "physical injury" must be an observable and diagnosable medical condition requiring treatment by a medical-care professional); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (bruised ear that lasted for three days was de

---

[48] Mot. – ECF No. 65 at 9−10; Reply – ECF No. 71 at 8−9. The defendants do not advance this argument about the First Amendment claim because 42 U.S.C 1997e(e) does not apply to First Amendment claims. The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show or any mental or emotional injury he may have suffered. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998).

minimis); *cf. Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1224 (9th Cir. 2008) (paraplegic inmate's bed sores and recurrent bladder infection caused by the lack of a proper mattress and inadequate supply of catheters were not de minimis). Physical symptoms that are not sufficiently separate from a plaintiff's allegations of emotional distress do not qualify as "a prior showing of physical injury." *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) ("somatic manifestations of emotional distress" such as weight loss, appetite loss and insomnia, cannot establish physical injury under § 1997e(e)).

The parties did not analyze in any meaningful way the cases where courts have addressed the force and injury alleged as a part of a challenge to conditions of confinement (as opposed to merely a stand-alone Fourth Amendment claim). In any event, as the Statement reveals, there are discrepancies in the fact record about the extent of Mr. Colvin's physical injuries. If the injuries advanced now are only indentations on his wrists that disappeared quickly (as opposed to the sworn declaration in the FAC about bruised ribs and more), then under the PLRA, that is not physical injury.

Mr. Colvin cites *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Oliver*, 280 F.3d at 628, in support of his argument that he is entitled to damages for mental and emotional distress, even without physical injury.[49] Those cases do not support that argument. But they — and others — confirm that punitive damages may be awarded in a § 1983 suit "when defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Similarly, § 1998e(e) does not bar claims seeking nominal or punitive damages that are not premised on any specified injury. *See Oliver*, 289 F.3d at 630 (§ 1997e(e) inapplicable to claims for nominal and punitive damages not premised on mental or emotional injury); *see Trevino v. Gates*, 99 F.3d 91, 922 (9th Cir. 1996) (citing *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978)); *Draper v. Coombs*, 792 F.2d 915, 921–22 (9th Cir. 1986); *see also Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 524 (9th Cir. 1999) (excessive-force plaintiff may seek nominal damages

---

[49] Opp'n – ECF No. 69 at 8.

on remand even though compensatory damages no longer available); *Doe v. Delie*, 257 F.3d 309, 314 n.3 (3d Cir. 2001) (nominal and punitive damages are unaffected by § 1997e(e)); *Allah v. Al-Hafeez*, 226 F.3d 247, 252 (3d Cir. 2000) ("Neither claims seeking nominal damages to vindicate constitutional rights nor claims seeking punitive damages to deter or punish egregious violations of constitutional rights are claims 'for mental or emotional injury.'") (quoting § 1997e(e)); *see also Carey*, 435 U.S. at 267 (plaintiffs were entitled to recover nominal damages "not to exceed one dollar"). Nominal damages may be awarded even if not expressly requested in the plaintiff's complaint. *Oliver*, 289 F.3d at 629–30 (citing *Allah*, 226 F.3d at 251) (liberally construing complaint, which was consistent with claim for nominal damages, to request such damages).

The court will address the damages issues through motions in limine (depending on the theory of the case) or jury instructions (depending on the evidence at trial).

## CONCLUSION

The court grants the motion for summary judgment on the claim for injunctive relief and otherwise denies the motion (with the caveat that this order addresses the scope of damages).

This disposes of ECF No. 65.

**IT IS SO ORDERED.**

Dated: March 25, 2020

_____
LAUREL BEELER
United States Magistrate Judge